# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

ninety n ninety, LLC,

     Plaintiff,

v.

City of Hopkins, Minnesota, a municipal
corporation,

     Defendant.

Court File No. _____

**COMPLAINT**
**(JURY TRIAL DEMANDED)**

---



***Plaintiff's House at 101 Oakwood Road***

This is a civil rights case brought by a sober home that exists to provide a safe and supportive environment for people recovering from alcohol and substance use disorders. But rather than welcoming these efforts, the City of Hopkins has chosen to enforce its exclusionary zoning laws to limit the efficacy of the Home and refuses to grant it a reasonable accommodation in violation of the Fair Housing Act and Americans with

1

Disabilities Act. Further, the City's decision-making was informed by explicitly sexist views in violation of the Fair Housing Act and Minnesota Human Rights Act. Accordingly, the Home now sues on behalf of itself and its current, former, prospective and future residents to permit it to operate within its neighborhood on the same terms as homes without persons with disabilities.

## INTRODUCTION

1.      This case is about disability and sex discrimination. Specifically, this case is about a Minnesota city applying an exclusionary zoning law to prevent men recovering from alcohol and substance use disorders from living in "single-family" residential zones.

2.      Plaintiff ninety n ninety, LLC ("Plaintiff") is a sober home with the purpose of providing a safe, sober and supportive living environment for men who have undergone treatment for alcohol or substance use disorder.

3.      Defendant City of Hopkins, Minnesota ("Defendant," "Hopkins," or the "City") is a Minnesota city in Hennepin County.

4.      In 2018, Plaintiff purchased the house at 101 Oakwood Road (the "Home") in the City.

5.      The Home is a detached, single-family house large enough to accommodate up to nine residents. It is located in a neighborhood that the City zones as a "single-family" neighborhood.

6.      However, the City's Rental and Zoning Code (the "Code") prevents the Home from realizing its full capacity as a sober home.

7.      That is, the Code prohibits more than four unrelated residents from residing

together in homes located within the single-family zoning district. It does not impose this restriction on the number of related people who can reside in a home.

8. Critically, municipal restrictions on unrelated individuals who may live together is widely understood to be part and parcel of early twentieth century segregationist tactics.[1] As an alternative to explicit restrictions, single-family zoning restrictions operate to prevent affordable housing from being located in single-family districts, thereby indirectly reducing housing opportunities within those districts for certain classes of persons.[2]

9. Today, zoning restrictions on unrelated persons residing together are often used as a means to segregate sober homes and their residents from relatively affluent locales and neighborhoods and, in particular, suburban areas.[3]

10. Plaintiff's Home at 101 Oakwood Road is located in one such neighborhood in the Minneapolis suburb of Hopkins, Minnesota.

11. In fact, the neighborhood in which Plaintiff's Home is located is designed to

---

[1] *See* Cecilia Rouse et al., *Exclusionary Zoning: Its Effect on Racial Discrimination in the Housing Market*, The White House (June 17, 2021), https://www.whitehouse.gov/cea/written-materials/2021/06/17/exclusionary-zoning-its-effect-on-the-housing-market/ (last accessed September 22, 2023).
[2] *See* Jonathan Rothwell, *The Effect of Density Zoning on Racial Segregation in U.S. Urban Areas*, 44 Urban Affairs Rev. 779 (2009).
[3] *See* Leonard A. Jason et al., *Counteracting 'Not in My Backyard': The Positive Effects of Greater Occupancy within Mutual-help Recovery Homes*, 36 J. COMM. PSYCH. 947 (2008). *See*, *e.g.*, *City of Edmonds v. Oxford House*, 514 U.S. 725 (1995); *One Love Housing, LLC et al. v. City of Anoka*, No. CV 19-1252 (JRT/DTS), 2021 WL 3774567, at *1 (D. Minn. Aug. 25, 2021); *Meraki Recovery Hous., LLC v. City of Coon Rapids, Minnesota*, No. 20-CV-0203 (PJS/KMM), 2021 WL 5567898, at *1 (D. Minn. Nov. 29, 2021).

exclude people. There are no bike paths, bus stops, and – with only one exception – no sidewalks within the neighborhood.



*Satellite Map of Plaintiff's Block and the Immediate East and West Blocks*[4]

12.     In 2022, Plaintiff applied to the City for a reasonable accommodation to the Code in order to allow its Home to operate with up to nine residents within the neighborhood. At the time of the request, the Home only had four residents.

13.     Relying on irrelevant, ignorant, sexist and ableist comments from the public, the City denied Plaintiff's request.

---

[4]  Retrieved from Google Maps at https://www.google.com/maps/@44.9233047,-93.3824156,660m/data=!3m1!1e3!5m2!1e4!1e1?entry=ttu (last accessed September 22, 2023).

4

14.     That reliance completely undermines any argument that the City had a legally justifiable reason for the denial.

15.     Indeed, at no time has the City articulated a legal (or sound) justification for the denial of Plaintiff's request. It has not found that accommodating Plaintiff's proposed nine-person living environment would frustrate any relevant purposes underlying the City's unrelated-related distinction.

16.     For these reasons, Plaintiff seeks damages and injunctive relief for discrimination on the bases of disability and sex, including failure to accommodate, disparate impact discrimination and facial discrimination.

## JURISDICTION AND VENUE

17.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

18.     This Court has jurisdiction to hear this Complaint and to adjudicate the claims stated herein pursuant to 28 U.S.C. § 1331 because the matters in controversy arise under the laws of the United States—specifically, the Fair Housing Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601, *et seq*. and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.

19.     This Court has supplemental jurisdiction to adjudicate state law claims stated herein pursuant to 28 U.S.C. § 1367 because they arise under the same set of facts as Plaintiff's claims under federal law.

20.     This Court has personal jurisdiction over Defendant because Defendant is located within the State of Minnesota.

21.     Venue is proper in this district under 28 U.S.C. § 1391 because the unlawful practices described herein occurred within this District.

## PARTIES

22.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

23.     Plaintiff ninety n ninety, LLC ("Plaintiff") is a Minnesota limited liability company with its principal place of business in the City of Hopkins.

24.     Plaintiff provides affordable housing and support to individuals with disabilities—specifically, those individuals recovering from alcohol or substance use disorder.

25.     Kevin Stanton is the owner and operator of Plaintiff and the Home at 101 Oakwood Road in the City.

26.     Defendant City of Hopkins (the "City") is a political subdivision of the State of Minnesota, organized and existing pursuant to Minnesota law.

27.     The City is responsible for the acts of its agents and employees, including the City Council.

28.     The City is also responsible for the enactment, enforcement and application of its Code of Ordinances, including its Rental and Zoning Codes.

## STATUTORY AND REGULATORY FRAMEWORK

29.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

*Disability Discrimination*

30.     Enacted in 1968 to provide a federal guarantee of fair housing, the Fair

Housing Act ("FHA"), 42 U.S.C. §§ 3601 *et seq*. prohibits discrimination on the bases of

certain protected classes. 42 U.S.C. § 3604(a).

31.     Recognizing that "[g]eneralized perceptions about disabilities and

unfounded speculations about threats to safety" are commonly used "as grounds to justify

exclusion," Congress amended the FHA in 1988 to extend the guarantee of fair housing to

"handicapped"[5] individuals. House Report No. 711, 100th Cong., 2d Sess. (1988); Fair

Housing Amendments Act of 1988, H.R. 1158, 100th Cong. (1988).

32.     Under the FHA, as amended, it is unlawful to discriminate against or

otherwise make unavailable or deny a dwelling to any buyer or renter because of a handicap

of that buyer, renter, or any person residing in or intending to reside in that dwelling after

it is sold, rented, or made available. 42 U.S.C. § 3604(f)(1). A person is considered

"handicapped" if she or he has a "physical or mental impairment which substantially limits

one or more of such person's major life activities, a record of having such an impairment,

---

[5] The Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* uses the term
"disability," with its definition "drawn almost verbatim from … the definition of 'handicap'
contained in the Fair Housing Amendments Act of 1988 …." *Bragdon v. Abbott*, 524 U.S.
624, 631 (1998). The terms have substantially the same legal meaning. *See One Love
Housing, LLC et al. v. City of Anoka*, No. CV 19-1252 (JRT/DTS), 2021 WL 3774567, at
*9 (D. Minn. Aug. 25, 2021); *See also Meraki Recovery Hous., LLC v. City of Coon Rapids,
Minnesota*, No. 20-CV-0203 (PJS/KMM), 2021 WL 5567898, at *4 n.8 (D. Minn. Nov. 29,
2021); *Tsombandis v. West Haven Fire Dept.*, 352 F.3d 565 (2d Cir. 2003).

or being regarded as having such an impairment." 42 U.S.C. § 3602(h). The term "physical or mental impairment" includes "alcoholism" and "drug addiction (other than addiction caused by current, illegal use of controlled substance)." 24 C.F.R. § 100.201.

33.     The FHA further provides that it is unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, based on a handicap of such person residing in or intending to reside in that dwelling after it is sold, rented, or otherwise made available. 42 U.S.C. § 3604(f)(2).

34.     Discrimination includes, among other things, a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling. 42 U.S.C. § 3604(f)(3).

35.     The federal regulations implementing the FHA specifically define as a discriminatory activity the provision of municipal services in a different manner based on a handicap. 24 C.F.R. § 100.70(d)(4).

36.     The federal regulations implementing the FHA further make it unlawful "to restrict or attempt to restrict the choices of a person by word or conduct in connection with seeking, negotiating for, buying or renting a dwelling so as to . . . discourage or obstruct choices in a community, neighborhood or development" because of a handicap. 24 U.S.C. § 100.70(a).

37.     Additionally, liability may be established under the FHA based on a practice's discriminatory effect even if the practice was not motivated by discriminatory

intent. 24 C.F.R. § 100.500.

38.     "A practice has a discriminatory effect where it actually or predictably results in a disparate impact on a group of persons or creates, increases, reinforces, or perpetuates segregated housing patterns because of … handicap …." 24 C.F.R. § 100.500. In these cases, liability can be averted only where there is a legally sufficient justification which is supported by evidence and is not hypothetical or speculative. 24 C.F.R. § 100.500(b)(2).

39.     In 2016, the U.S. Department of Housing and Urban Development and the U.S. Department of Justice also issued a Joint Statement further clarifying the FHA's reach.[6]

40.     The Joint Statement defines a "sober home" as a "group home" "occupied by persons in recovery from alcohol or substance abuse."[7] "[T]he term 'group home' refers to a dwelling that is or will be occupied by *unrelated persons* with disabilities."[8] *Id*. (Emphasis added.)

41.     A locality may therefore violate the FHA by "refus[ing] to waive an ordinance that limits that number of unrelated persons who may live in a single-family home," particularly if that waiver is "necessary for persons with disabilities to have an ***equal opportunity*** to use and enjoy a dwelling." Joint Statement, at *8 (emphasis added).

42.     Additionally, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§

---

[6] *See* HUD/DOJ Joint Statement on State and Local Land Use Laws and Practices and the Application of the Fair Housing Act (2018), https://www.justice.gov/opa/file/912366/download ("Joint Statement").
[7] *Id.* at *7.
[8] *Id.*

12101 *et seq.* provides that no qualified individual with a disability shall, by reasons of such disability, be excluded from participation in or be denied the benefits of the services, program, or activities of a public entity, or be subjected to discrimination by any municipal entity. 42 U.S.C. § 12132.

43.     The federal regulations that implement the ADA prohibit a public entity from administering a licensing program or establishing certain requirements for activities of a licensee in a manner that subjects qualified disabled individuals to discrimination on the basis of disability. 28 C.F.C. § 35.130(6).

44.     The federal regulations implementing the ADA also make it unlawful for a public entity, in determining a site or location of a facility, to make selections that have the purpose or effect of excluding individuals with disabilities, denying them the benefits of certain locations, or otherwise subjecting them to discrimination. 28 C.F.R. § 35.130(4)(I).

### *Sex Discrimination*

45.     As enacted in 1968, the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601, *et seq.* also prohibits discrimination on the basis of sex. 42 U.S.C. § 3604(a).

46.     The federal regulations implementing the FHA prohibit "[e]nacting or implementing land-use rules, ordinances, … policies, or requirements that restrict or deny housing opportunities or otherwise make unavailable or deny dwellings to persons because of … sex." 24 C.F.R. § 100.70(d)(5).

47.     Similarly, the Minnesota Human Rights Act ("MHRA"), §§ 363A.01, *et seq.* prohibits discrimination "in the access to, admission to, full utilization of or benefit from any public service because of … sex." Minn. Stat. § 363A.12, subd. 1.

10

*Hopkins City Code*

48.    At all relevant times, the City's Zoning Code has limited who can live in areas zoned for single-family use by prohibiting more than four unrelated persons from living together.

49.    On or around June 10, 2022—when Plaintiff filed its request for a reasonable accommodation—the Code prohibited more than four unrelated individuals from residing together in areas zoned exclusively for "single-family" homes. The Code had no such limit on the number of related persons residing together in single-family homes.

50.    Under that version of the Code, Plaintiff's Home was located in the R-1 zoning district. Only single-family homes were permitted in that district.

51.    On July 19, 2022, while Plaintiff's request was pending, the City adopted Ordinance 2022-1180 replacing the City's prior Code. The ordinance went into effect on July 28, 2022.

52.    Under the new Code, Plaintiff's Home is now situated in the N2 zoning district which "is primarily intended to accommodate detached and semi-detached houses in a more suburban context." § 102-210(B)(2). One unit "Household[s]" are permitted in the N2 district "as-of-right." Table 5-1; § 102-510(b)(2); § 102-530(c).

53.    The Code defines a "Household" as "An individual or [sic] 2 or more persons each related to the other by blood, marriage, adoption, or foster care, or a group of not more than 4 persons not so related." § 102-16100.

54.    Plaintiff's proposed sober home is therefore not a household under the Code but rather falls under the Code's definition of "Group Living," which refers to property

uses "characterized by residential occupancy of all or a portion of a building by a group other than a household." § 102-530(c).

55.     The Code, with few exceptions inapplicable here, prohibits "Group Living" in the N2 district except by the City's grant of a variance or reasonable accommodation. § 102-13130.

## STATEMENT OF FACTS

56.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

57.     In 2018, Plaintiff, through Kevin Stanton, purchased the house at 101 Oakwood Road.

58.     In 2019, the City became aware that Mr. Stanton intended to use the Home as a sober home.

59.      Plaintiff then began accepting only residents from inpatient treatments centers who are in recovery from alcohol and substance use disorder. In fact, the residents that came to live in the Home and those that live there today have all completed inpatient treatment for alcohol and substance use disorder. In other words, only those in recovery from alcohol and/or substance use disorder have lived or live in the Home.

60.     And though Plaintiff intended to house up to nine individuals in the Home, the City on several occasions notified Plaintiff that it would not allow more than four individuals pursuant to the Code's restriction on more than four unrelated persons residing in a single-family dwelling.

61.     Currently, there are three residents in the Home, as well as a Catholic priest

who helps manage the Home and provides spiritual support to the residents.

62.     The four individuals referenced above who reside in the Home are individuals with a handicap or disability by virtue of their history of alcohol or chemical dependency combined with their completion of a substance use treatment program.

63.     The Home provides a supportive, peer-driven living environment designed to increase self-responsibility for persons in recovery from alcohol or substance use disorder.

64.     The residents of the Home must willingly choose to participate in the program and reside at the Home. All of the residents must sign a contract that requires them to follow Home rules.

65.     The Home is used as a single-family home with similar support and collaborative functions. The residents of the Home relate to each other as the functional equivalent of a single family.

66.     All of the residents have access to the entire Home, including all of the household facilities and function together as a single housekeeping unit. The residents share all household responsibilities and live together to create a "family" atmosphere, where all aspects of domestic life are shared by all residents.

67.     On June 3, 2022, the Hennepin County Human Services and Public Health Department approved Plaintiff's plan to use the Home as a "Residential lodging facility with 9 bedrooms," subject to approval from the City of Hopkins to operate with more than four unrelated individuals.

*Denial of Reasonable Accommodation Requests*

68.    On or around June 10, 2022, a week after receiving approval from Hennepin County, Plaintiff filed a request for a reasonable accommodation to the Code's restriction on unrelated persons residing together.

69.    On or around June 2022, the City notified residents in Plaintiff's neighborhood that Plaintiff requested a reasonable accommodation to the City's zoning restriction and solicited public comment on the matter.

70.    The vast majority of comments opposed the accommodation.

71.    In fact, many of the over 100 comments the City received were discriminatory and irrelevant in nature and simply to prevent additional persons recovering from alcohol and substance use disorders from living in the neighborhood. Some of these comments noted, for example:

   a.    "if these are people and **men that are in recovery** I do not feel that this is the right location for it." (emphasis added);

   b.    "**History has demonstrated that 9 men, related or unrelated, living together, will lead to problems** and is not appropriately situated in a neighborhood comprised of single family homes." (emphasis added);

   c.    "it is my opinion that Kevin Stanton … sets the intent of the Fair Housing act back in the eyes of the general public. I would assume a professional operator, **knowing full well this issue can be inflammatory in a community**, would make every effort to inform and educate all parties affected before moving forward." (emphasis added);

14

d. "most using the occupancy will only be using it for a cheap place to sleep";

e. "My mother also lives with us and loves to walk the neighborhood to get exercise and chat with the neighbors. She's in her 80s and not as steady on her feet. All it would take is for a belligerent resident to startle her and she'd topple over and be in the ER.";

f. "This is a neighborhood of people **with families** and we don't need ***that kind*** of accommodation in this neighborhood." (emphasis added);

g. The neighborhood "is the absolute worst place that you could put a place like that. This is **a family** neighborhood …" (emphasis added); and,

h. "An enlarged home for **UNRELATED** adults is **NOT** appropriate in this neighborhood of families and older citizens …" (emphasis in original).

72.    The comments also mischaracterized the Home as a "half way" house.

73.    One comment posed, "What will prevent another business entity from purchasing a single-family home within the City and converting it to lodge up to 9 unrelated individuals, using this property as precedent?"

74.    One comment expressed upset that they could hear someone watching Wheel of Fortune in the Home.

75.    Another comment requested that background checks be performed on the Home's residents "**because … the handicap involved is alcoholism**." (emphasis added).

76.    Despite the City's assertion that discriminatory comments were excluded from its consideration, it nevertheless relied on many of these comments in denying

15

Plaintiff's request for reasonable accommodation.[9]

77.    On or around October 7, 2022, the City denied Plaintiff's reasonable accommodation request, confirming that—under the new Code— Plaintiff would still be barred from operating a sober home in the zoning district.

78.    Applying the new code, the City found that Plaintiff's proposed use of the Home was "more appropriately classified as Group Living," which "is not an appropriate use in the N2 district" – the new zoning district in which Plaintiff's Home is located.

79.    In denying Plaintiff a reasonable accommodation to the Code's restriction on the number of unrelated individuals residing together in the N2 district, the City incorrectly found that "the Request does not provide information confirming that residents meet the definition of having a disability" nor "that increasing the number of residents is financially or therapeutically necessary."

80.    The City also based its denial on, among other things, the following findings:

- "that the requested accommodation is inconsistent with the nature of the surrounding neighborhood.";

- that an accommodation would "also result in increased number of parked cars";

- that the City would "incur significant additional time and expense confirming the individuals living at the Property were, in fact, disabled under the ADA and FHA";

---

[9] In its denial of Plaintiff's reasonable accommodation request and in the record of Plaintiff's appeal, the City cited to and attached dozens of these public comments as an exhibit. As attached, the City provided annotations for each comment that addressed whether the comment was relevant for its consideration.

16

- that there "has been an increase in police calls" to the property since it began operating[10];

- that Mr. Stanton (who the City confuses as the Applicant rather than ninety n ninety, LLC) "has already chosen to involve his attorney"; and,

- that public comments overwhelmingly disfavor the use of the property both as a sober home and as a residence of nine individuals.

81.    Without explanation, the City distinguished the Home's prior use as "a convent for nuns for the church across the street" – which it previously permitted, from its use as sober home. The City nevertheless found that an accommodation for a sober home "would result in a fundamental alteration of … the City's zoning code."

82.    Additionally, the City's denial frequently mistook the Applicant for the request to be Mr. Stanton rather than Plaintiff. As a result, the City also based its denial in ad hominem attacks against Mr. Stanton personally, such as allegations made against Mr. Stanton in a prior and unrelated marital proceeding which it cited in its denial.

83.    On or around November 7, 2022, Plaintiff filed an appeal and the City later scheduled a special City Council hearing for December 6, 2022.

84.    At the hearing, City Council members and other representatives of the City made, among other things, the following comments:

- "This does not seem to be a reasonable use *in this community and a reasonable*

---

[10] The denial, however, does not mention that the City actually concluded that "review of police calls does not validate resident concerns related to public disturbances …"

*use of the property*." (Patrick Hanlon, Mayor) (emphasis added);

- "It is true that there are other avenues to deal with certain matters that have come up regarding the property and what the applicant has done, and the applicant's behavior …" (Scott Riggs, City Attorney); and,

- "With the four participants at this property … it has not been a good experience" (Scott Riggs, City Attorney).

85.     On or around January 3, 2023, the City Council upheld the denial of Plaintiff's reasonable accommodation request, summarizing the findings of the original denial.

86.     But the denial of Plaintiff's reasonable accommodation request is based on a confused and discriminatory application of law.

87.     First, the City erroneously considered Mr. Stanton's private and personal history in determining whether ninety n ninety, LLC – not Mr, Stanton – was entitled to a reasonable accommodation to the City's Zoning Code.

88.     Second, the scope of the City's inquiry was impermissibly broad and irrelevant to the issue at hand. Plaintiff sought an accommodation to the Code's four-person restriction on unrelated persons who may reside together. The City already allows related individuals to reside together without this restriction, and Plaintiff's Home can otherwise legally accommodate up to nine persons.

89.     Thus, the only question before the City was whether Plaintiff was entitled to a reasonable accommodation against the requirement that residents be related to reside

together in numbers greater than four. Yet no portion of the City's denial or the City Council's appeal decision rests on any purported reasons driving the City's disparate restrictions on related and unrelated residents. The City does not even attempt to provide a serious reason for the distinction.

90.     As Mayor Hanlon suggested, the analysis ultimately morphed into one about whether a sober home was "a reasonable use in this community." Whether or not a sober home is a good idea is irrelevant to a reasonable accommodations request.

91.     Third, "fundamental alteration of … the City's zoning code" is simply another way of stating that they do not want men recovering from alcohol and substance use disorders living in the neighborhood. The public comments summarized above indicate as much.

_The City's Actions Have Injured Plaintiff and the People Plaintiff Serves_

92.     The residents, prospective residents and future residents of the Home are people with disabilities because they are in recovery from alcohol or substance use disorder.

93.     Limited to only four residents, the Home is unable to provide the requisite level of support to truly achieve its purpose.

94.     The people who reside in the Home have been and will continue to be injured so long as the Home remains unable to fully-operate with a greater number of supportive residents. Recovering alcohol and substance users benefit from living in an environment the intended goal of which is to ensure their overall health and safety **as** recovering alcohol and substance users. Denied the opportunity to obtain a basic level of affirmative social

support, to live in an environment uniquely suited to their statuses as recovering alcohol and substance users, and in an environment comparable to that they would receive at a standard sober home, the residents are forced to either accept a sober home with substandard levels of support or go to a sober home in a different community.

95.    Moreover, those who desire or may desire to live in Plaintiff's sober home and in its neighborhood are harmed because the City's restriction on unrelated persons requires the Home to deny more prospective residents the opportunity to live in its neighborhood than it otherwise would.

96.    Plaintiff seeks to protect the interest of the people who reside in the Home as well as those who otherwise could and, indeed, those interests are germane to Plaintiff's purpose because Plaintiff seeks to serve and support only men in recovery from alcohol use and substance disorder.

97.    Plaintiff, too, has been injured by the City's actions. Because the ordinance prevents Plaintiff from operating at full capacity, Plaintiff is unable to impact the greatest number of individuals it otherwise could. This not only affects the ability of Plaintiff to create its necessary familial community but disadvantages Plaintiff in the marketplace of sober homes, forces it to operate at a monetary loss, and prevents it and its residents from gaining and utilizing pecuniary resources that would otherwise be available if the Home were operating at full capacity.

98.    With only four residents, the Home operates at an estimated loss of $1,255.00 a month. It collects a total of $1,950.00 in rent ($650 per each resident), a rate consistent both with rent charged by other sober homes as well as the reality that those who are most

likely to need sober homes are those with little economic opportunity. Additionally, its monthly expenses include taxes ($602.00), insurance ($280.00), sewer, water and garbage ($158.00), gas and electric ($400.00), internet ($40.00), as well as maintenance and improvement expenses.

<u>**CAUSES OF ACTION**</u>

**COUNT I**
**Disparate Impact Disability Discrimination Under the Fair Housing Act**

99.     Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if fully set forth herein.

100.   The City is discriminating against Plaintiff on the basis of handicap in violation of the FHA and its implementing regulations.

101.   The use of ordinances restricting the number of unrelated persons who may reside together to exclude sober homes from single-family neighborhoods is a practice so pervasive as to be a restriction on sober homes themselves.

102.   Similarly, the City employs its zoning Code restriction on the number of unrelated persons who may reside together to bar Plaintiff from fully operating its sober home at 101 Oakwood Road.

103.   The City has not provided a legally sufficient justification for its restriction on the number of unrelated persons who may reside together.

104.   As a sober home, Plaintiff must serve groups of unrelated persons.

105.   Thus, the City's enforcement of its restriction on unrelated persons residing together disparately impacts Plaintiff *because* it is a sober home.

106.   Plaintiff, its residents, and prospective and future residents have been injured as result.

107.   Specifically, Plaintiff has suffered monetary damages because the Home not only operates at a loss of $1,255.00 each month with just four residents but is further prevented from realizing the gains that would result from its full operation.

108.   As a result of Defendant's conduct, Plaintiff is also entitled to its attorneys' fees and costs.

## COUNT II
### Failure to Accommodate Under the Fair Housing Act

109.   Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if fully set forth herein.

110.   The City is discriminating against Plaintiff on the basis of handicap in violation of the FHA and its implementing regulations.

111.   Plaintiff is a sober home designed to provide a living environment specific to persons in recovery from alcohol and substance use disorder.

112.   Plaintiff requested, and the City refused to grant, a reasonable accommodation to the number of unrelated residents who may reside together in single-family zoned districts.

113.   By denying the request for reasonable accommodation, the City thereby denied persons recovering from alcohol and substance use disorders the equal opportunity to live in the housing of their choice.

114.   As a result of the City's actions, Plaintiff and people with disabilities who

live or want to live in the Home have been injured.

115.   Specifically, Plaintiff has suffered monetary damages because the Home not only operates at a loss of $1,255.00 each month with just four residents but is further prevented from realizing the gains that would result from its full operation. As a result of the City's failure to allow Plaintiff to house nine recovering individuals, Plaintiff is deprived of an additional $3,250 in income each month from the additional residents.

116.   People with disabilities who live or want to live in the Home are deprived of a fully-operating sober living environment, including all of the attendant material, emotional, social and therapeutic benefits that living in a family-like community would entail and are made to suffer other irreparable harm as a result of the City's actions.

117.   As a result of Defendant's conduct, Plaintiff is also entitled to its attorneys' fees and costs.

**COUNT III**
**Discrimination Under the Americans with Disabilities Act**

118.   Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if fully set forth herein.

119.   Plaintiff provides housing to people with disabilities as defined in 42 U.S.C. § 12102(2).

120.   The City is a public entity, falling under 42 U.S.C. § 12131(1).

121.   The City's actions to exclude future residents of the Home from single family residential zones violate Plaintiff's rights under the ADA and the regulations promulgated thereunder.

23

122.   Specifically, the City violates Plaintiff's ADA rights by denying people with disabilities the opportunity to participate in or benefit from the supportive housing program Plaintiff offers, denying people with disabilities the opportunity to participate in a program in the most integrated setting appropriate to their needs in a discriminatory manner and different from the opportunities presented to people without disabilities; and enforcing the Code to deny people with disabilities the enjoyment of rights, privileges, advantages and opportunities enjoyed by people without disabilities.

123.   As a result of Defendant's conduct, Plaintiff has suffered monetary damages, and people with disabilities who live or want to live in the Home have also been injured.

124.   Specifically, as to Plaintiff, the Home not only operates at a loss of $1,255.00 each month with just four residents but is further prevented from realizing the gains that would result from its full operation.

125.   People with disabilities who live or want to live in the Home are deprived of a fully-operating sober living environment, including all of the attendant material, emotional, social and therapeutic benefits that living in a family-like community would entail and are made to suffer other irreparable harm as a result of the City's actions.

126.   As a result of Defendant's violation, Plaintiff is also entitled to its attorneys' fees and costs.

### COUNT IV
### Sex Discrimination under the Fair Housing Act

127.   Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if fully incorporated herein.

128.   Alcoholism is a condition pervasively stereotyped and recognized to afflict men.

129.   Alcoholism has long been and remains, socially, a gendered activity. That is, "(a) The act of drinking per se symbolizes masculinity; (b) the media explicitly portray alcohol as manly; and (c) alcohol use is closely tied to other male sex role attributes," particularly "unconventionality, risk taking, and aggressiveness."[11] Drinking is a stereotypically male activity regardless of who it is done by.

130.   Similarly, persons with alcohol use disorder "tend to be perceived as more dangerous and more responsible for their condition, as well as being faced with a greater desire for social distance and a higher degree of acceptance of structural discrimination than people with substance-unrelated disorders. … [Alcohol use disorder] remains among the most stigmatized mental disorders…"[12]

131.   Moreover, those who suffer from alcoholism and undergo treatment for alcohol use disorder are disproportionately men.[13]

132.   Plaintiff serves only men.

133.   In denying Plaintiff the ability to fully operate its sober home, the City relied on several public comments which were sexist in nature – many of which explicitly

---

[11] Russel Lemle and Marc E. Mishkind, *Alcohol and Masculinity*, 6 J. SUBSTANCE ABUSE TREATMENT 213 (1989).

[12] Carolin Kilian *et al.*, *Stigmatization of people with alcohol use disorders: An updated systematic review of population studies*, 45 ALCOHOL CLIN. EXP. RES. 899, 908 (2021).

[13] *See*, *e.g.*, Aaron M. White, *Gender Differences in the Epidemiology of Alcohol Use and Related Harms in the United States*, 40 ALCOHOL RES. 2 (2020); Henry R. Kranzler and Michael Soyka, *Diagnosis and Pharmacotherapy of Alcohol Use Disorder: A Review*, 320 JAMA 816 (2018).

attributed sexist stereotypes to persons in recovery from alcohol use disorder or referenced that Plaintiff's residents are and would be men. These comments were included as the basis for the City's denial of Plaintiff's reasonable accommodation request despite its assertion that discriminatory comments would be excluded from consideration.

134.   In failing to exclude sexist comments from its consideration, in refusing to provide services for the residents of the sober home, and in relying on stereotypes about alcoholics in its review and decision, the City engaged in illegal sex discrimination under 42 U.S.C. § 3604(a).

135.   Furthermore, the City's related-unrelated distinction within its Code constitutes facial sex discrimination in violation of and 42 U.S.C. § 3604(a) because a requirement that members of a family must be related necessarily conditions rights and privileges to live in a community on adherence to traditional sex and gender roles.

136.   As a result of Defendant's conduct, Plaintiff has suffered monetary damages, and persons who live or want to live in the Home have also been injured.

137.   As a result of Defendant's violation, Plaintiff is also entitled to its attorneys' fees and costs.

**COUNT V**
**Sex Discrimination under the Minnesota Human Rights Act**

138.   Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if fully incorporated herein.

139.   In failing to exclude sexist comments from its consideration, in refusing to provide services for the residents of the sober home, and in relying on stereotypes about

alcoholics in its review and decision, the City engaged in illegal sex discrimination under Section 363A.12 of the MHRA.

140.   Furthermore, the City's related-unrelated distinction within its Code constitutes facial sex discrimination in violation of Section 363A.12 of the MHRA because a requirement that members of a family must be related necessarily conditions rights and privileges to live in a community on adherence to traditional sex and gender roles.

141.   As a result of Defendant's conduct, Plaintiff has suffered monetary damages, and persons who live or want to live in the Home have also been injured.

142.   As a result of Defendant's violation, Plaintiff is also entitled to its attorneys' fees and costs.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff requests relief as follows:

1.      Enter a declaratory judgment that the City has illegally discriminated against Plaintiff in violation of the FHA, ADA, and the MHRA;

2.      Enter a declaratory judgment stating that Plaintiff's use of the Home as a "sober home" is consistent with classification of the premises as a single-family dwelling;

3.      Provide injunctive relief restraining the City from discriminating against Plaintiff and interfering with Plaintiff's current operation of the Home as a home for people with disabilities recovering from alcohol and substance abuse;

4.      Award compensatory damages;

5.      Award of reasonable costs and attorneys' fees; and

6.     Order such other and further relief as the Court deems just and proper.


Dated: October 18, 2023                **NICHOLS KASTER, PLLP**


s/Anna P. Prakash _____
Steven Andrew Smith, MN Bar No. 260836
Anna P. Prakash, MN Bar No. 0351362
4700 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 215-6870
smith@nka.com
aprakash@nka.com

**THE HOFFNER FIRM LTD**.
Fabian S. Hoffner, MN Bar No. 0202514
Samuel Merritt, MN Bar No. 0398082
310 4th Ave. S., Suite 5010
Minneapolis, MN 55415
Telephone: (612) 206-3777
Facsimile: (612) 573-6590
fabian@fabianhoffner.com
merritt@fabianhoffner.com

**ATTORNEYS FOR PLAINTIFF**